**Eloy S. PLUYER, Plaintiff-Appellee Cross Appellant,**

**American Mutual Liability Insurance Company, Intervenor-Appellee Cross Appellant,**

v.

**MITSUI O. S. K. LINES, LTD., Defendant-Appellant Cross Appellee.**

No. 79–2148.

United States Court of Appeals, Fifth Circuit.* Unit A

Jan. 4, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Michael J. Mestayer, J. Dwight LeBlanc, Jr., J. Francios Allain, James R. Holmes, New Orleans, La., for defendant-appellant cross appellee.

Henderson, Hanemann & Morris, Philip E. Henderson, Houma, La., Roy, Carmouche, Hailey, Bivins & McNamara, James W. Hailey, Jr., Metairie, La., for plaintiff-appellee cross appellant.

Before MARKEY**, Chief Judge, and GEE and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Eloy S. Pluyer, a longshoreman, sued Mitsui O.S.K. Lines, Ltd., for personal injuries he sustained during stevedoring operations on a Mitsui vessel. Finding negligence, the trial judge awarded Pluyer damages, granted judgment to the intervenor, but expressly declined to award prejudgment interest. All parties appeal. We affirm.

### Facts

Pluyer and five other longshoremen employed by Strachan Shipping Company, a contract stevedore, were assigned to work on the SACRAMENTO MARU, a vessel owned by Mitsui. The men were to lash and secure several containers which had been placed on a hatch cover. This process required a chain to be fastened from the top of each container to fittings on the hatches.

The containers were approximately eight feet high and a ladder was needed to reach their tops. Since Strachan had not equipped its longshoring gang with a lad-

** Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

der, a member of the vessel's crew furnished the longshoremen with an eight foot aluminum ladder which belonged to the vessel. The ladder did not have rubber "snubbers," a non-skid device, on the bottom. Pluyer used the ladder to fasten the chains to the tops of the containers while two co-workers attached the chains to the hatch and adjusted the turnbuckles to remove the slack. As Pluyer began to descend the ladder after attaching a chain to the top of one container, the ladder slipped and Pluyer fell to the hatch cover, injuring his back, right shoulder and arm.

Pluyer received a total of $25,640.11 in benefits under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.* He timely filed suit against the vessel pursuant to section 5(b) of the LHWCA, 33 U.S.C. § 905(b),[1] claiming that the vessel was negligent in furnishing a ladder which was not properly equipped with non-skid devices. American Mutual Liability Insurance Company, Strachan's benefits insurer, intervened. Following a bench trial, the district court found both the vessel and the stevedore negligent. The court also concluded that Pluyer was 40% contributorily negligent. Pluyer received a net award of $9,895.89;[2] the intervenor was awarded judgment fully reimbursing it for the benefits paid.

## I.   *The Court's Findings*

Mitsui contends that the trial court's findings relating to the ladder, essential to its determination of the vessel's negligence, were clearly erroneous. Conflicting testimony was presented concerning whether the ladder was equipped with non-skid devices in the form of rubber snubbers. The

trial court credited Pluyer's testimony, and we will not lightly disturb such a credibility call. *Rodriguez v. Jones*, 473 F.2d 599 (5th Cir.), *cert. denied*, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). We similarly view the trial court's finding that the ladder was unsafe. The captain of the vessel testified that it is unsafe to use a metal ladder on a metal deck without non-skid devices and that company policy required the use of rubber snubbers on the feet of such ladders. On the basis of the record, we are not prepared to say that the trial judge's finding that the ladder was unsafe is clearly erroneous. Therefore, our analysis of the vessel's liability proceeds on the basis that the vessel furnished an unsafe ladder to the longshoremen.

## II.   *Section 905(b) Liability*

We must determine the extent of a vessel's duty to longshoremen under 33 U.S.C. § 905(b), and the impact, if any, of the recent Supreme Court decision in *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), on the law in this circuit concerning the specific negligence issue now under consideration. If *Scindia* changed the law as previously applied in this circuit we must examine the present case in light of the new standards. If *Scindia* occasions no change regarding the situation before us, we must determine whether the trial judge correctly applied the controlling rules. We conclude that *Scindia* did not change the pertinent law heretofore recognized in this circuit regarding the narrow issue here presented and that the trial judge committed no error in resolving the liability issue.

---

1. Section 905(b) provides in relevant part:

   In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void .... The liability of the vessel

   under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act.

2. This figure reflects $34,226 in lost wages plus $25,000 in general damages, reduced by 40% (the degree of Pluyer's negligence) and debited $25,640.11 to reimburse the intervenor.

### The Scindia Rule

A brief overview of the development of shipowners' liability to injured longshoremen is helpful in placing the *Scindia* decision in proper perspective. Prior to the 1972 amendments to the LHWCA, a longshoreman injured while performing stevedoring operations was entitled to compensation benefits and judgment against the vessel if the injury was caused by unseaworthiness or negligence attributable to the vessel. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Liability for unseaworthiness was imposed without regard to fault; the injured person had only to prove an unsafe, injury-causing condition on the vessel. If the injury-causing condition was occasioned by the stevedore, the shipowner could recoup its losses from the stevedore for breach of the warranty to handle the cargo in a reasonably safe manner. *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

The 1972 amendments made dramatic changes beyond substantially increasing benefits. The longshoreman's right to recover for unseaworthiness and the stevedore's obligation to indemnify the shipowner were abolished. The longshoreman's right to recover for negligence was preserved by section 905(b), but the section did not specify what acts or omissions would constitute actionable negligence. The legislative history provides only limited assistance and, perhaps not unexpectedly, a divergence of opinion developed among the circuits. The divergence was most critical concerning the vessel's duty when hazardous conditions arose during the stevedoring operations. The *Scindia* decision seeks to resolve that conflict.

In *Scindia,* a defective ship's winch that was being operated by longshoremen caused a sack of wheat to fall and injure a longshoreman. The longshoremen were aware that the winch had been malfunctioning for two days but continued to use it. There was no evidence that any member of the ship's crew was aware of the malfunction.

In considering the ship's negligence, the Supreme Court first observed that "the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." 451 U.S. at 172, 101 S.Ct. at 1624. The Court went on to state, however, that if a defect exists from the outset of the stevedoring operation, or if a vessel knows or is chargeable with knowledge of a hazardous condition which develops during the operation, and if the vessel knows or reasonably should anticipate that the stevedore is exercising improvident judgment concerning the hazard, the shipowner has a duty to intervene. The Court concluded that a summary judgment should not have been granted because a jury question was presented whether "the shipowner was aware of sufficient facts to conclude that the winch was not in proper order, or that the winch was defective when the cargo operations began and that *Scindia* was chargeable with knowledge of its condition." 451 U.S. at 178, 101 S.Ct. at 1627.

The case before us presents a different situation from that posed in *Scindia* which was concerned only with the liability of the vessel for dangerous conditions which develop during the stevedoring operations. The present case involves the vessel's liability for hazards that antedate or are coincident with the commencement of the cargo operations. Further, in *Scindia* the negligence was passive; the complaint was based on the vessel's failure to act. In the instant case the negligence is active; the vessel furnished an unsafe ladder. The policy considerations which militate against imposing a duty on the shipowner to constantly monitor the stevedore's work are therefore not applicable.[3]

Although the Court did not directly address the precise question now before us,

---

3. Having concluded that the *Scindia* holding is inapposite because of the factual variance, we do not consider Mitsui's argument that the trial judge erred in excluding evidence concerning Strachan's safety practices. Those practices are not pertinent to the legal issue before us.

the opinion affords some guidance. In commenting on the duty of a shipowner turning a vessel over to the stevedore, the Court stated:

> This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.

451 U.S. at ——, 101 S.Ct. at 1621–22 (citations omitted). Our previous decisions are not inconsistent with this statement, nor does it call into question the glossations we have made on the basic doctrine. We conclude that *Scindia* did not change the law in this circuit as relates to the situation presented by Pluyer. Having so concluded, we examine the trial court's application of the prevailing rules.

### Open and Obvious Danger

■ This appeal does not involve latent defects or hazardous conditions on premises; it involves an affirmative act of negligence by the vessel. To that extent, the Restatement of Torts provisions dealing with liability of landowners to invitees, and the cases construing those provisions, are of little applicability. The trial court found the vessel to be affirmatively negligent. We are not persuaded that this finding is clearly erroneous.[4]

■ Mitsui nonetheless maintains that the ladder should be considered a condition of the vessel and thus subject to the concepts expressed in Restatement of Torts, Second § 343A which preclude the imposition of liability if the danger is open and obvious. The trial judge found that the danger of a metal ladder without non-skid devices slipping on a metal deck was an open and obvious danger, but this does not end the inquiry. Since our decision in *Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233 (5th Cir. 1977), we have recognized that recovery for personal injuries by longshoremen encountering open and obvious dangers is allowed where the danger "must be faced notwithstanding knowledge." *Id.* at 1242. *See Walker v. Blacksea S.S. Co.*, 637 F.2d 287 (5th Cir. 1981).

■ The trial judge determined that the fact that the danger inherent in the use of the ladder was open and obvious did not bar Pluyer's recovery. We agree. A ladder was necessary for Pluyer to perform his assigned tasks. The unsafe ladder was the only one furnished. The suggestions that the ladder could have been used without incident by the expedient of lashing it to the containers or having another hold it while Pluyer climbed up are not realistic. Lashing was not practical and suggesting that one lonshoreman hold a ladder steady while a second ascends it ignores the realities of the stevedore work environment. Considering all relevant circumstances, we agree with the trial judge's conclusion that

---

4. As a general rule, in maritime cases questions of negligence and proximate cause "are treated as factual issues which cannot be disturbed on appeal unless the resolutions are clearly erroneous." *Valley Towing Serv., Inc. v. S.S. American Wheat, Etc.*, 618 F.2d 341, 346 (5th Cir. 1980).

as to Pluyer, use of the unsafe ladder was unavoidable.[5]

### III. *Prejudgment Interest*

█ Pluyer claims the trial judge erred in not awarding prejudgment interest. Pluyer concedes that the award of prejudgment interest lies within the discretion of the trial judge, but cites *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir. 1979), for the proposition that the allowance of prejudgment interest is the rule rather than the exception. We recently reaffirmed that rubric in *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 728 (5th Cir. 1980), wherein we stated:

> As a general rule, prejudgment interest should be awarded in admiralty cases— not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled. Discretion to deny prejudgment interest is created only when there are "peculiar circumstances" that would make it inequitable for the losing party to be forced to pay prejudgment interest. *See, e. g., Socony Mobil Oil Co. v. Texas Coastal & International, Inc.*, 559 F.2d 1008, 1014 (5th Cir. 1977); *American Zinc Co. v. Foster*, 441 F.2d 1100, 1101 (5th Cir.), *cert. denied sub nom. Ingalls Shipbuilding Division of Litton Systems, Inc. v. American Zinc Co.*, 404 U.S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95 (1971).

(Footnote omitted.) But a denial of prejudgment interest is not in itself an abuse of discretion. As we stated in *Noritake*:

> If the trial court *explicitly denies* prejudgment interest (rather than merely omitting any reference to it), then this is based on a factfinding that peculiar circumstances exist; the factfinding is sometimes explicitly set out, with the peculiar circumstances detailed in the court's findings of fact and conclusions of law, or it may be implicit in the denial of prejudgment interest without a listing of the circumstances. If the trial court was not clearly erroneous in finding that peculiar circumstances exist, then its denial of prejudgment interest was discretionary. In most instances, we have not found such a denial to be an abuse of discretion.

627 F.2d at 729 (footnote omitted).

█ In the present case, the trial judge made no reference to prejudgment interest in the initial judgment or in the findings of fact and conclusions of law. However, Pluyer filed a post-trial motion seeking a modification of the judgment to provide for, inter alia, prejudgment interest and a specific rate for the interest awarded. The trial judge entered an order expressly denying prejudgment interest and subsequently modified the judgment to provide for a specific rate of post-judgment interest. The trial judge expressly ruled on the issue of prejudgment interest. We cannot say that the judge's implicit finding that peculiar circumstances exist is clearly erroneous.

The judgment of the district court is AFFIRMED.

---

5. The trial judge also concluded that Pluyer's inability to communicate with his fellow workers due to his limited knowledge of English and his reluctance to object to using the ladder for fear of losing his job contributed to the unavoidability of the danger. These considerations are relevant and have some limited significance.