Homer BONNER, Jr., (Tony Bonner, Executor of the Estate of Homer Bonner, substituted in place and stead of Homer Bonner, Jr.) Plaintiff-Appellant,

v.

CHEVRON U.S.A., Defendant-Appellee.

No. 81–4271

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 22, 1982.

Camilo K. Salas, III, New Orleans, La., Maurice Dantin, Columbia, Miss., for amicus curiae Jack B. McIntosh.

John L. Low, IV, Jackson, Miss., for defendant-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

On April 2, 1976, Homer Bonner, Jr., was injured while working on a fixed drilling platform, owned by Chevron, U.S.A., Inc., located off the coast of Louisiana. On December 1, 1980, Bonner filed suit against Chevron invoking the Outer Continental Shelf Lands Act (Lands Act), 43 U.S.C. §§ 1331–56. Chevron moved for dismissal on the ground that the suit was not timely filed because Louisiana's one year statute of limitations was applicable to Bonner's *ex delicto* suit. The district court agreed and granted the dismissal, 512 F.Supp. 1313. We affirm.

There is no question that the accident causing Bonner's injuries occurred on a fixed drilling platform located on the outer continental shelf off the coast of Louisiana. Consequently, Louisiana is the "adjacent state" within the intendment of the Lands Act, and pertinent Louisiana law becomes surrogate federal law applicable to Bonner's claim. Congress ordained this policy in 43 U.S.C. § 1333(a), which reads:

(1) The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom ... to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: ...

(2)(A) To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf ....

Prior to passage of the Lands Act, the question of what law was applicable to "artificial islands," such as Chevron's drilling platform, was problematic. In *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355–57, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969), the Supreme Court traced the history of the Lands Act and discussed how Congress addressed the matter:

The purpose of the Lands Act was to define a body of law applicable to the seabed, the sub-soil, and the fixed structures such as those in question here on the Outer Continental Shelf. That this law was to be Federal law of the United States, applying state law only as Federal law and then only when not inconsistent with applicable Federal law, is made clear by the language of the Act. Section 3 makes it the "policy of the United States" that the affected areas "appertain to the United States and are subject to its jurisdiction, control and power of disposition." Section 4 makes the "Constitution and laws and civil and political jurisdiction of the United States" apply "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State." Since federal law, because of its limited function in a federal system, might be inadequate to cope with the full range of potential legal problems, the Act supplemented gaps in the federal law with state law through the "adoption of state law as the law of the United States." Under § 4, the adjacent state's laws were made "the law of the United States for [the relevant sub-soil and

seabed] and artificial islands and fixed structures erected thereon, but only to the "extent that they are applicable and not inconsistent with . . . other Federal laws."

It is evident from this that Federal law is "exclusive" in its regulation of this area, and that state law is adopted only as surrogate federal law.

(Footnotes omitted.)

■ For purposes of determining Bonner's rights as a consequence of the injuries he sustained on April 2, 1976, we resort to Louisiana law which becomes, because of the mandate of the Lands Act, federal law. Articles 2315 through 2324 of the Louisiana Civil Code govern tort liability in the circumstances presented. The Civil Code also prescribes a one year period for Bonner to commence an action to recover damages for the personal injuries he sustained in the accident. La.Civ.Code art. 3536.

Our decision is aided by the Supreme Court's conclusion in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), a case involving a similar factual background. In that case, Huson was injured on a fixed platform located off the coast of Louisiana. More than a year after the accident, he filed suit in federal court in Louisiana. The district court, relying on *Rodrigue*, held that Louisiana's one-year limitation on personal injury actions governed. We reversed, concluding that the admiralty doctrine of laches and not Louisiana's prescriptive provision was applicable. The Supreme Court granted certiorari and stated: "We hold that the Lands Act, as interpreted in *Rodrigue*, requires that the state statute of limitations be applied to personal injury actions." *Id.* at 100, 92 S.Ct. at 352.

Bonner argues that since his suit was brought in federal court in Mississippi the controlling rule on limitations is Mississippi law, which allows six years for suit to be filed in an action of this kind. Bonner contends that although Louisiana substantive law governs, Mississippi's procedural law, including its statute of repose, is to be applied. We do not agree. Even assuming

that statutes of limitations are procedural rules in other contexts, in this case, by virtue of the Lands Act as applied in *Rodrigue* and *Huson*, the Louisiana one-year period of prescription governs as part of the "comprehensive body of state law" applicable. *Id.* The federal borrowing of state law under the Lands Act is all-inclusive, encompassing the Louisiana Civil Code article prescribing the period in which suit must be filed. In reaching this conclusion, we are guided by the Supreme Court's decisions in *Rodrigue* and *Huson* and its statement in *Gulf Offshore Co. v. Mobil Oil Corp.*, —— U.S. ——, ——, 101 S.Ct. 2870, 2876, 69 L.Ed.2d 784 (1981), that "a personal injury action involving events occurring on the Shelf is governed by federal law, the content of which is borrowed from the law of the adjacent State . . . ."

For purposes of his action under the Lands Act, Bonner was limited to one year in which to file his claim as a matter of federal law. Bringing suit in a Mississippi federal forum did not change the applicable period of limitations. The trial judge concluded that the Louisiana limitations article "precludes the maintenance of the present suit." We agree.

AFFIRMED.