Alfred LEWIS, Plaintiff-Appellant
Cross-Appellee,

v.

TIMCO, INC., et al.,
Defendants-Appellees,

v.

JOY MANUFACTURING,
Defendant-Appellee
Cross-Appellant.

No. 81–3022.

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1983.

Opinion on Granting of Rehearing En
Banc April 18, 1983.

Robert K. Guillory, Cornelius Dupre, II,
Eunice, La., for plaintiff-appellant, cross-appellee.

Patrick A. Juneau, Jr., Lafayette, La., for Home Petroleum.

Robert M. Contois, Jr., Edith Brown Clement, New Orleans, La., for Atwood Oceanic, Inc.

James E. Diaz, Lafayette, La., for Rebel Rentals.

John A. Jeansonne, Jr., Lafayette, La., for Joy Mfg.

Hal Broussard, Lafayette, La., for Timco.

Before GARZA, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Alfred Lewis was injured while working on a jackup drilling barge in the coastal waters of Louisiana. Lewis sued Joy Manufacturing Company (manufacturer of the power tong unit involved in his injury), Home Petroleum Corporation (the offshore mineral lessee), Atwood Oceanics, Inc. (owner and operator of the VICKSBURG, the barge on which the injury occurred), Edwards Rental and Fishing Tools, Inc. (engaged in retrieving an obstruction from the drilling hole), and Rebel Rentals, Inc. (owner of the power tong unit involved in the accident). After a bench trial, the district court assessed financial responsibility 40% each to Joy Manufacturing and Rebel Rentals and 20% to Edwards Rental.[1] Lewis was found 50% at fault in a comparative negligence analysis and his damages were accordingly reduced, resulting in a net recovery of $343,027.22.

Lewis appeals contending that insofar as Joy Manufacturing is concerned, his claim sounds in strict products liability and, therefore, comparative negligence should not operate to reduce his recovery. We agree. Joy Manufacturing cross-appeals, contending that Timco and Atwood Oceanics should not have been dismissed as defendants. We disagree. Accordingly, the judgment of the trial court is affirmed in part and reversed in part.

## Facts

Lewis, part of a crew furnished by Timco to the VICKSBURG, operated hydraulic tongs used in the "make-up" of tubing joints being placed in a well.[2] A computerized control unit was supplied by Rebel Rentals to monitor the torsional force applied to the tubing joints. Encountering difficulty using the original tongs with the control unit, Rebel Rentals sent the vessel a set of Hillman-Kelley Model 500C tubing tongs manufactured by Joy Manufacturing.[3] These were involved in the accident.

1. Home Petroleum Corporation and Atwood Oceanics were dismissed by the trial court, the latter on the basis of *Gay v. Ocean Transp. & Trading, Ltd.,* 546 F.2d 1233 (5th Cir.1977). Lewis' claim against Timco, Inc. was dismissed because his exclusive remedy against his employer was under the Longshoremen's and Harbor Workers' Compensation Act. Commercial Union Assurance Company was awarded its subrogation claim for the Longshoremen benefits paid.

2. The accident occurred on a drilling barge in Louisiana's territorial waters and not on a fixed platform on the Outer Continental Shelf. Accordingly, the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–56, is not involved. Had Lewis' injuries been sustained aboard a fixed platform off the Louisiana coast, his action against Joy Manufacturing would have been a strict liability suit under the Lands Act, borrowing from Louisiana law since Louisiana would have been the "adjacent state" within the intendment of the Lands Act. *See Bonner*

*v. Chevron U.S.A.,* 668 F.2d 817 (5th Cir.1982). Were that the case, the dilemma would be intriguing—would Lewis' negligence bar or diminish his products liability claim? There is authority for both a negative response, *Rodrigue v. Dixilyn Corp.,* 620 F.2d 537 (5th Cir. 1980); *Khoder v. AMF, Inc.,* 539 F.2d 1078 (5th Cir.1976), and a positive response, *Hyde v. Chevron U.S.A., Inc.,* 697 F.2d 614 (5th Cir. 1983).

3. As described by the district court:

The Hillman-Kelley 500C tongs are designed to apply power for making up and disconnecting tubing joints. The tongs are designed so that controls must be coordinated for them to function properly. A rocker bar located on top of the rotor must be down on the "in" position in order to make up joints properly. Both must be changed to the "out" position in order to disconnect joints properly. Under certain circumstances, if the controls are crossed the tong will not

Lewis was relatively inexperienced in the operation of the tongs. On the day before his accident, a piece of equipment used to test the tubing was accidentally dropped in the drilling hole. An employee of Edwards Rental was dispatched to retrieve the equipment with a special "fishing tool." While Lewis and other Timco workers were assisting in the "fishing" operation, the power tong device failed to shut off automatically upon release of the throttle, as it should have done, and Lewis was seriously injured. As the trial court found, the "tongs had a design defect in that a control setting could be imposed which would cause them to continue operating even when the throttle was released."[4] The district court considered Lewis to be negligent for "attempting to make up the fishing tool joint without adjusting the length of the snubbing line."

■ The findings that the power tongs were defective and unreasonably dangerous and that Lewis' negligence contributed to

his injuries squarely present the question whether the general maritime law rule of comparative negligence is applicable in a products liability case by a longshoreman.[5] We conclude that it is not.

### Strict Liability and Comparative Negligence

■ Although Joy Manufacturing challenges on appeal the trial court's conclusion that the tongs were defective, we are convinced that the district court's findings are legally and factually correct. That precipitates our consideration of the question of comparative negligence in a strict products liability suit, heard in federal court by virtue of the general maritime law. We start with the premise that comparative fault has long been the generally accepted doctrine in maritime torts. *See, e.g., United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *Pope & Talbot,*

shut off automatically on release of the throttle but will continue to apply force to the tubing or other device in its jaws. Under those circumstances, only the snubbing line attached to the opposite end of the tongs prevents the tool from revolving around its tubing. If the snubbing line has too much slack in it, the tool will rotate around the tubing and wrap the snubbing line around the *operator of the tongs.*

4. The district court further found:
Although the instructional manual for the tongs pointed out the necessity for synchronizing the controls, it gave no warning of the severe hazard created by failing to synchronize, nor was there any such warning on the tool itself. These design deficiencies in the tongs and the instructions accompanying them rendered the tongs defective and unreasonably dangerous to the operator. Additionally, Joy was negligent in furnishing tongs with these defects which it knew or should have known rendered the tongs unnecessarily dangerous to normal use.
In explaining the basis of liability of Edwards Rental and Rebel Rentals, the district court observed:
Timco and many other companies which operated tongs routinely disconnected linkage so that the 500C tong would disengage even if the controls were not synchronized. The Rebel representatives on the rig had knowledge of this practice. This knowledge by the Rebel representatives should have made it obvious to them why Lewis was experiencing difficulty in disengaging the

tongs; this knowledge of the operation of the Rebel tong and observation of plaintiff's problem with the tong made it imperative that the Rebel representatives instruct plaintiff on the proper manner of operating the tong. I find that the Rebel representatives observed the persistent problems Mr. Lewis encountered in disengaging the tongs and were negligent in failing to instruct him as to the proper method of synchronizing the controls . . . .
Mr. Larry Franks was the representative of Edwards on the rig and was in direct charge of the fishing operation in which plaintiff was participating at the time of his accident. Mr. Franks had broad experience in oilfield work. While it was plaintiff's primary responsibility as operator of the tong to adjust the snub line, Mr. Franks also should have been aware of the fact that the snub line was too long and I find Mr. Franks was negligent in failing to advise plaintiff to shorten the snub line.

5. Our recent decision in *Boudreaux v. American Workover, Inc.,* 680 F.2d 1034 (5th Cir. 1982) (en banc), leaves little doubt that Lewis was classified correctly as engaged in "maritime employment" within the meaning of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50. *See Pippen v. Shell Oil Co.,* 661 F.2d 378 (5th Cir. 1981). This characterization defines the responsibility of Timco and Atwood Oceanics to Lewis.

*Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). But this sapient rule that when "all share in fault for the loss, all should share in bearing the economic burden," *Houston-New Orleans, Inc. v. Page Engineering Co.,* 353 F.Supp. 890, 900 (E.D. La.1972), is not absolute. We are persuaded that the principle should yield to accommodate the realities of a products liability action.

As a policy matter, strict liability in tort in products cases deals with business or enterprise responsibility; "public policy demands that the burden of accidental injuries caused by products intended for consumption be placed on those who market them, and be treated as a cost of production against which liability insurance can be obtained." Restatement (Second) of Torts § 402A, comment c (1965). This basic objective is impaired when a plaintiff's recovery in a products liability case is diminished by comparative negligence. Plant, *Comparative Negligence and Strict Tort Liability,* 40 La.L.Rev. 403 (1980); Hickey, *Comparative Fault and Strict Products Liability: Are They Compatible?,* 5 Pepperdine L.Rev. 501 (1978). Indeed, since the concept of "strict liability" involves holding a defendant—a manufacturer or a distributor in the products case—answerable without a demonstration of negligence,[6] it is considered by many commentators to be a separate ground for a tort suit. One writer has stated, "no comparison of conduct is possible, since the bases of imposition of strict and negligent liability are dissimilar." Note, *Products Liability, Comparative Negligence, and the Allocation of Damages Among Multiple Defendants,* 50 S.Cal.L. Rev. 73, 102 (1976).[7]

Our colleagues in several of the other circuits have reached opposite results, either implicitly or explicitly applying or declining to apply the doctrine of comparative negli-

gence in products liability cases in admiralty. The Eighth Circuit, in *Lindsay v. McDonnell Douglas Aircraft Corporation,* 460 F.2d 631 (8th Cir.1972), a products liability case in admiralty, applied the rules of strict liability, citing Restatement (Second) of Torts § 402A (1965) as "the correct law to be applied." In *Schaeffer v. Michigan-Ohio Navigation Co.,* 416 F.2d 217 (6th Cir. 1969), a quorum decision, the Sixth Circuit recognized the viability of a products liability claim in admiralty and, without discussion but merely citing *Pope & Talbot,* applied the doctrine of comparative fault. The Ninth Circuit opinion in *Pan-Alaska Fisheries, Inc. v. Marine Const. & Design Co.,* 565 F.2d 1129 (9th Cir.1977), contains a more detailed discussion. While acknowledging that the doctrine of strict products liability is compatible with admiralty and that comment "n" to section 402A of the Second Restatement of Torts rejects contributory negligence as a defense, the *Pan-Alaska* court wrote: "we find that any label in comment 'n' which ... allows plaintiff to recover full damages, even though he was partially at fault ... is not consistent with comparative fault principles and is therefore rejected." *Id.,* at 1139 (*citing Sun Valley Airlines v. Avco-Lycoming Corp.,* 411 F.Supp. 598 (D.Idaho 1976); *Butaud v. Suburban Marine & Sporting Goods, Inc.,* 555 P.2d 42 (Alaska 1976)). We are not persuaded.

We conclude that if the user of a defective product acts in a reasonably foreseeable manner, his simple negligence, ineptness or inadvertence, while possibly contributing to his injuries, should not aid the manufacturer of an unreasonably dangerous item by effectively reducing the manufacturer's financial accountability. The *Pan-Alaska* court, while invoking the comparative negligence rule, noted that its

---

**6.** A showing of utmost care in the manufacture of a defective item is no defense to a manufacturer in a products liability case.

**7.** Other commentators have likened comparative negligence and strict products liability to trying to fit "square pegs in round holes," Robinson, *Square Pegs (Products Liability) In*

Round Holes (Comparative Negligence), 52 Ca. St.B.J. 16 (1977), or attempting to mix oil and water. Feinberg, *The Application of a Comparative Negligence Defense in a Strict Products Liability Suit Based on Section 402A of the Restatement of Torts 2d,* 42 Ins. Counsel J. 39 (1975).

sense of justice and fair play would be offended if a manufacturer were required to bear the entire loss in an instance where the product defect were slight and the user's conduct highly irresponsible. 565 F.2d 1139–40. This reasoning cuts both ways. In the case before us, the trial court found as a fact, protected by Rule 52(a) of the Federal Rules of Civil Procedure, that the power tongs were defective and dangerous. Lewis and others working aboard the VICKSBURG were placed in substantial peril by this defect. As contrasted with the risks to which Joy Manufacturing exposed many, Lewis' simple negligence in failing to properly adjust the "snub line" on the tongs wanes into insignificance. And the inadvertence of Lewis, working on only his second full-time job assignment as a power tong operator, endangered no one but himself.

If strict products liability seeks to impose enterprise responsibility upon the entity exposing others to the risks of its defective products, as we perceive the rationale, then the facts of the instant case dramatize the inappropriateness of applying comparative negligence principles. We therefore decline to apply the doctrine of comparative negligence in this strict products liability action in admiralty. To the extent Lewis' recovery against Joy Manufacturing was diminished by his negligence, we reverse the trial court.

### The Dismissal of Atwood Oceanics

■ Both Lewis and Joy Manufacturing argue that the Supreme Court's decision in *Scindia Steam Nav. Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), altered the law in this circuit regarding a vessel's duty to a longshoreman under 33 U.S.C. § 905(b). Specifically, Lewis urges that the district court erred in failing to find Atwood Oceanics at fault although its employees had seen him experiencing difficulty in using the tongs. We cannot agree. The trial judge stated:

Although the Atwood crew observed plaintiff's difficulty in operating the tongs, they had *no peculiar knowledge* of the nature of the problem.

Considering the obvious nature of the danger inherent in operating the tong with the snub line too long and the fact that the operations were being directly supervised by Mr. Franks, I find no fault

on the part of Atwood or its employees established by 33 U.S.C. § 905(b).

The defective equipment was owned by Rebel Rentals, and used by Home Petroleum; it was not part of the VICKSBURG's regular gear. The job that Lewis was engaged in at the time of the accident was supervised by Edwards Rental, not Atwood Oceanics. Thus, unlike the *Scindia* case where a longshoreman was injured as a result of a malfunctioning winch which was part of the vessel's equipment, Atwood Oceanics neither controlled nor created the circumstances which led to Lewis' injury. Aside from the factual differences between the case before us and the situation in *Scindia,* we are convinced that the district court applied the proper legal test by citing *Stockstill v. Gypsum Transp.,* 607 F.2d 1112 (5th Cir.1979), *Brown v. Mitsubishi Shintaku Ginko,* 550 F.2d 331 (5th Cir.1977), and *Gay v. Ocean Transp. & Trading Co.* In a similar case, we noted that we do not read *Scindia* as changing the law in this area. *Pluyer v. Mitsui O.S.K. Lines, Ltd.,* 664 F.2d 1243 (5th Cir.1982).

For the reasons assigned, we REVERSE that portion of the trial court's judgment reducing Lewis' recovery from Joy Manufacturing by reason of the application of comparative negligence, remanding for the entry of an appropriate decree; in all other respects, to the extent appealed we AFFIRM the district court.

### ON PETITIONS FOR REHEARING AND SUGGESTIONS FOR REHEARING EN BANC

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, GARZA, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.