Robert C. MORRIS, Plaintiff-Appellee,

Cooper Stevedoring Co., Inc., and Insurance Company of North America, Intervenors–Appellees,

v.

COMPAGNIE MARITIME DES CHARGEURS REUNIS, S.A., Defendant–Appellant.

No. 86–2776.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1987.

John P. Forney, Jr., Eastham, Watson, Dale & Forney, Houston, Tex., for Compagnie Maritime Des Chargeurs Reunis, S.A.

Philip B. Dye, Jr., King Waters, Marie R. Yeates, Vinson & Elkins, Houston, Tex., for intervenors—Cooper Stevedoring Co., Inc, & Ins. Co. of North America.

M. Jackson Tabor, Houston, Tex., for Robert C. Morris.

Before CLARK, Chief Judge, GEE, RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Invoking § 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA),[1] longshoreman Robert Morris sued to recover damages for injuries he sustained while loading cargo on a ship owned by Compagnie Maritime des Chargeurs Reunis. Morris's employer, Cooper Stevedoring Company, and its insurer intervened to recover the compensation and medical benefits already paid to Morris. Finding the shipowner negligent for turning over to the stevedore equipment unsafe for its reasonably careful and foreseeable use, the district court held for Morris. We reverse because we find in the record no evidence that due care should have led the shipowner to discover a hidden defect and because, if the defect was obvious, the stevedore should have noticed and avoided it.

### I.

In the summer of 1980, Morris was working as a plugman for Cooper Stevedoring aboard the Ticonderoga. A plugman sets the plugs that lock together each layer of containers preventing cargo from shifting while a ship is at sea. On the day of the accident, the stevedore was stacking cargo containers on the deck of the ship. After loading the first layer of containers and using a crane to lift a container to begin loading the second layer, the longshoremen noticed that the plugs were missing from one container on the first level. The stevedore's foreman instructed Morris and his co-worker Davis to set the plugs. Because the crane properly fitted for riding workers to the top of a container was already in use, Morris obtained a straight aluminum ladder belonging to the ship, leaned it against the side of the container, and climbed atop the container to set the plugs. This task completed, he began to descend the ladder, but, unsecured, it slipped on the metal deck. No one held the ladder for either his ascent or descent. Morris fell entangled with the ladder and nearly ampu-

tated his foot at the ankle. As a result of this injury, he walks with difficulty and pain, his permanent disability making it impossible for him to continue to work as a longshoreman.

The district court found that how Morris obtained the ladder was "unclear." Morris testified that the stevedore's walking foreman handed it to him and ordered him to use it, but the shipowner offered testimony suggesting that Morris went and found it himself. The parties also dispute whether the ladder was in good condition. The district court found that it was not bent or missing rungs but that it "either had no rubber feet or the rubber feet were worn slick on the bottom." The court also found that "nothing in the record suggests that either the shipowner or ship's crew had any knowledge of the ladder's condition or the fact that Plaintiff and Davis were using the ladder."

Although by federal regulation[2] and contract, the stevedore must supply safe ladders for its employees, the district court found that in the port of Houston the custom is for stevedores to rely on the ships they are serving to provide ladders. Therefore, the district court reasoned, the shipowner should have anticipated that the stevedore would use the ladder. Finding that the shipowner had made available to the stevedore a ladder unfit for its reasonably foreseeable and careful use, the district court held the shipowner liable under *Scindia Steam Navigation Co. v. De Los Santos.*[3]

### II.

In *Scindia,* the Supreme Court interpreted § 905(b), enacted as part of the 1972 amendments to the LHWCA, which abolished the longshoreman's right to recover against the shipowner for unseaworthiness but preserved the longshoreman's right to recover from the shipowner for negli-

---

1. 33 U.S.C. § 905(b) (1982).

2. Occupational Safety and Health Admin., Labor, 29 C.F.R. § 1918.25 (1987).

3. 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

gence.[4] Determining that Congress intended the statute to relieve the shipowner of "automatic, faultless responsibility for conditions caused by the negligence or other defaults of the stevedore,"[5] the Court outlined the following standard for determining whether the shipowner was negligent in how it maintained the vessel before turning it over to the stevedore:

> Th[e shipowner's] duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.[6]

Relying on the first of these duties, Morris contends that the shipowner is liable for his injuries because it failed to exercise ordinary care to maintain the ladder in a condition reasonably safe for the experienced stevedore's reasonably careful use. Morris contends alternatively that the shipowner is liable because it knew or by the exercise of ordinary care should have known of the defect in the ladder, this defect was hidden, and the shipowner neglected to warn the stevedore.

■ We analyze the claims against the shipowner based on each of the alternative facts found by the district court, even though they are clearly contradictory. The district court found first that the ladder had rubber feet, but they were worn slick on the bottom, a defect discoverable only by "turn[ing] the ladder over and inspect[ing] the bottoms of the rubber feet." If this was the defect, the issue is whether the shipowner knew or in the exercise of ordinary care should have known of it. The district court found that neither the shipowner nor the crew knew of the ladder's condition. Morris failed to establish that ordinary care would have led the shipowner to discover the defect. Indeed, the record contains no evidence establishing what practices constitute ordinary care among shipowners. Neither testimony nor documentary evidence showed that shipowners regularly inspect the ladders on their vessels or engage in maintenance programs. Shipowners may well do both in the exercise of ordinary care, but this court is not qualified to make that assumption. The district court therefore erred in finding Compagnie Maritime negligent for failing to discover a hidden defect in the absence of any evidence as to whether due care required inspections and, if so, of what kind.

■ The district court found in the alternative that "[t]he danger posed by the ladder might have been open and obvious if the ladder simply had no rubber feet." We read this statement, although framed in terms of possibility, as a finding that the absence of rubber feet was in fact an obvious defect. If obvious, it should have been as apparent to the stevedore as to the shipowner. It is contradictory to suggest that a careful shipowner should discover an

---

**4.** § 905(b) provides in relevant part:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.

**5.** *Scindia*, 451 U.S. at 168, 101 S.Ct. at 1622–23.

**6.** *Id.* at 167–68, 101 S.Ct. at 1622.

apparent defect but that a careful stevedore may miss it with impunity.

Recognizing that the stevedore should have noticed an obvious defect, the district court found that the exigent circumstances under which Morris worked required use of the ladder, defective or not. This circuit has long held that a stevedore's actual or constructive knowledge of a danger created by a shipowner will not bar the longshoreman's recovery if, when faced with the danger, the longshoreman's " 'only alternatives would be to leave his job or face trouble for delaying work.' " [7] The record in this case supports the district court's finding that Morris and Davis were pressed to set the plugs so that the loading process could proceed. The finding of exigent circumstances, however, conflicts with another of the district court's findings: that "ladders were 'all around the ship' the day of the accident (McCall, Tr[ial Transcript] 7), and the stevedore's ladders were locked away on [the] d[o]ck." With other ladders readily accessible, the pressure to use a clearly defective one cannot have been great. Nor would the momentary delay caused by seeking a safer ladder have significantly impaired the loading process. The finding that exigent circumstances required use of an obviously defective ladder lacking safety feet was, therefore, error.

Morris relies on *Pluyer v. Mitsui O.S.K. Lines* [8] as authority for holding the shipowner liable in this case. In *Pluyer*, this court affirmed a decision making a shipowner liable to a longshoreman injured while descending a ladder furnished by a member of the vessel's crew. This court accepted the trial court's findings that the ladder was missing rubber feet and that this defect was so obvious that the shipowner and the stevedore should have noticed it in the exercise of due care. In *Pluyer*, however, use of the defective ladder was unavoidable.[9] The court noted that "the unsafe ladder was the only one furnished" and that lashing the ladder or asking another longshoreman to hold it would have been impractical under the circumstances.[10] In this case, on the contrary, the trial court's finding that ladders were available all over the ship requires us to reject the inference that Morris had to use an unsafe one.

Morris also cites *Lemon v. Bank Lines, Ltd.,*[11] and *Theriot v. Bay Drilling Corporation,*[12] cases suggesting that a shipowner is liable for injuries caused by an obviously dangerous condition existing on the ship before the stevedore assumed control even without a showing of circumstances requiring the longshoreman to encounter the danger. In *Lemon*, a longshoreman was unloading a ship's hold when he noticed that the cargo seemed unstable. In an attempt to secure the stowage, he fell, some of the cargo toppled with him, and he was injured. This court overturned a judgment n.o.v. for the shipowner, finding sufficient evidence on which a reasonable jury could have concluded that the ship's crew had actual knowledge of the improper loading technique and failed to correct the stowage or to warn the stevedore. In reaching this decision, the court read *Scindia* as follows:

> The Supreme Court has clearly established that the ability of a longshoreman to recover cannot turn on who was in the best position to recognize and remedy a dangerous condition when the condition was created by a vessel owner who knew or should have known of its existence prior to the stevedore's operations.[13]

The *Theriot* court employed similar reasoning. Theriot, a torque-wrench operator on a drilling barge, was called upon to assemble certain well head equipment. As

---

**7.** *Harris v. Flota Mercante Grancolombiana, S.A.,* 730 F.2d 296, 299 (5th Cir.1984) (quoting *Stass v. American Commercial Lines,* 720 F.2d 879, 882 (5th Cir.1983)) (quoting *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505, 509 (2d Cir. 1976)).

**8.** 664 F.2d 1243 (5th Cir.1982).

**9.** *Id.* at 1248.

**10.** *Id.* at 1247.

**11.** 656 F.2d 110 (5th Cir.1981).

**12.** 783 F.2d 527 (5th Cir.1986).

**13.** *Lemon,* 656 F.2d at 116.

he approached the deck where the equipment was located, he encountered a large area visibly covered with drilling mud. Crossing the deck, he fell in the mud and injured his knee. This court affirmed the district court's holding that the shipowner was liable, not only because it failed to clean the deck before Theriot began his work, but also because it continued to control the work area in which the accident occurred.[14] The court apparently rejected the shipowner's argument that to establish its liability, Theriot had to show the necessity of facing the obvious danger, and yet in rejecting this argument the court quoted the familiar rule that "when faced with an openly dangerous shipboard condition, the longshoreman's 'only alternatives would be to leave his job or face trouble for delaying the work.' "[15]

We do not understand *Lemon* and *Theriot* to overrule the cases predicating the shipowner's liability on a showing of circumstances pressing the longshoreman to risk a danger notwithstanding the stevedore's knowledge of that danger.[16] As *Pluyer* demonstrates, the longshoreman need not show that he had no possible alternative but to use defective equipment or to work in a dangerous area. The burden is not so heavy. He need show only that the circumstances made safer alternatives unduly impractical or time-consuming. In both *Lemon* and *Theriot*, the longshoremen had no alternatives but to stop or delay their work. To continue unloading the cargo, Lemon had to work in a hold improperly stowed. To reach the equipment he was to assemble, Theriot had to cross a deck slippery with mud, find a safer way around the ship, or wait for the mud to be cleaned up. In this case, on the contrary, Morris and the stevedore could have avoided the danger with almost no interruption of their work by using any of the safe ladders "all around the ship" or by using one of the stevedore's own ladders locked away on the dock.

We emphasize that we do not here resurrect the defenses of contributory negligence or assumption of risk laid to rest by *Scindia*[17] and by subsequent decisions of this court.[18] If Morris were negligent and the shipowner were also negligent, Morris could recover damages from the shipowner reduced only by his proportionate fault.[19] In this case, however, the shipowner was not negligent. *Scindia* entitles the shipowner to rely on an "expert and experienced stevedore" acting with "reasonable care."[20] Cooper Stevedoring fell well below this standard in failing to notice and to take the easy steps that would have avoided the obvious danger presented by the defective ladder. Because the shipowner has no duty to anticipate the actions or inaction of a careless stevedore, Morris must look only to his employer for compensation for his injuries.

For these reasons, we REVERSE the district court's holding.

---

14. *Theriot*, 783 F.2d at 535.

15. *Id.* at 536 (quoting *Stass*, 720 F.2d at 882) (quoting *Napoli*, 536 F.2d at 509).

16. *See, e.g., Harris*, 730 F.2d at 299; *Pluyer*, 664 F.2d at 1247–48.

17. 451 U.S. at 176 n. 22, 101 S.Ct. at 1626 n. 22.

18. *Theriot*, 783 F.2d at 536; *Stass*, 720 F.2d at 882; *Lemon*, 656 F.2d at 116.

19. *See Theriot*, 783 F.2d at 536.

20. *Scindia*, 451 U.S. at 168, 101 S.Ct. at 1622.