United States Court of Appeals,

Fifth Circuit.

No. 91–2901

Summary Calendar.

Trinidad PIMENTAL, Plaintiff–Appellant,

v.

LTD CANADIAN PACIFIC BUL, et al., Defendants–Appellees.

July 9, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Trinidad Pimental is a longshoreman. He brought this suit against the defendant vessel owner for damages arising from an injury he sustained while unloading the vessel M/V Fort Nanaimo. At the close of the defendant's evidence, the district court took the case away from the jury and granted a directed verdict in favor of the vessel owner.

Pimental appeals. He argues that he presented sufficient evidence from which a reasonable jury could find the vessel owner liable. We hold that the evidence does not support a finding of liability. We therefore affirm the judgment of the district court.

I

Trinidad Pimental was employed by the I.T.O. Corporation, the stevedore, to unload cargo from the M/V Fort Nanaimo, a vessel owned by the defendant. Pimental operated the Number 3 crane, which was attached to the vessel, on the second day of the unloading operations. While descending from the crane to the main deck, Pimental slipped and fell on oil and grease that were on the landing inside the housing for the crane. This accident permanently disabled him from performing the duties of a longshoreman.

Pimental presented evidence that there were oil and grease in the crane housing and that the lighting in the housing was inadequate. Two crane operators who operated the crane earlier on the day of the accident and the day before the accident testified that the oil and grease was immediately obvious to them. These crane operators reported the condition to the gang foreman and the walking foreman, who were both employed by the stevedore. Plaintiff offered no proof that these conditions were reported to the vessel crew.

During the cargo operations, the stevedore had absorbent material alongside the dock that was designed to "dry up" oil spills. After the accident, the stevedore, unsatisfied with the vessel's clean-up job, used the material to clean up the oil in the crane housing. The material was easily and quickly applied.

II

On appeal, Pimental argues that the district court erred in granting the vessel owner's motion for a directed verdict because he presented evidence from which a reasonable jury could find it liable under Section 5(b) of the Longshore and Harbor Workers' Compensation Act.[1] A directed verdict is appropriate only if, after considering all the evidence and drawing all inferences therefrom in favor of the non-moving party, the court is convinced that no reasonable jury could find in favor of the non-movant. *Lloyd v. John Deere Co.,* 922 F.2d 1192, 1194 (5th Cir.1991). We review a district court's granting of a directed verdict *de novo. Id.*

III

Section 5(b) of the Longshore and Harbor Workers' Compensation Act provides in pertinent part:

In the event of injury to a person covered under this chapter caused by the negligence

---

[1] 33 U.S.C. § 905(b).

of the vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.

33 U.S.C. § 905(b). In *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court articulated the scope of a vessel's duty under § 5(b). "The basic principle which emerges from *Scindia* is that the primary responsibility for the safety of the longshoremen rests upon the stevedore." *Randolph v. Laeisz,* 896 F.2d 964, 970 (5th Cir.1990). Despite this broad statement of vessel immunity, vessel liability may arise:

1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.

2) for injury caused by hazards under the control of the ship.

3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of "obviously improvident" judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.

*Id.; Masinter v. Tenneco Oil Co.,* 867 F.2d 892, 897 (5th Cir.1989). Thus, the district court erred if Pimental presented sufficient evidence from which a reasonable jury could find the defendant liable under one of these exceptions.

A

Pimental argues that the defendant failed to turn over a safe vessel because he failed to warn the stevedore that there was oil and grease on the passageway in the crane housing. In *Scindia,* the Supreme Court held that a vessel has a duty:

to have the ship and its equipment in such a condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. The

shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden dangers which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.

*Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622. Generally speaking, the defendant has not breached its duty to turn over a safe vessel if the defect causing the injury is open and obvious and one that the longshoreman should have seen. *Polizzi v. M/V Zephros II Monrovia,* 860 F.2d 147, 149 (5th Cir.1988); *Morris v. Compagnie Maritime Des Chargeurs Reunis, S.A.,* 832 F.2d 67, 71 (5th Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988). However, if a longshoreman's only alternatives when facing an open and obvious hazard are unduly impracticable or time-consuming, then the vessel owner may still be held liable. *Treadaway v. Societe Anonyme Louis–Dreyfus,* 894 F.2d 161, 167 (5th Cir.1990); *Morris,* 832 F.2d at 71; *Teply v. Mobil Oil Corp.,* 859 F.2d 375, 378 (5th Cir.1988).

In the instant case, the two crane operators who operated the crane the day of the accident and the day before testified that the oil and grease on the passageway were immediately obvious to them. Evidence was also presented that during the unloading, the stevedore had a product on the dock that could quickly and easily be used to clean up the oil and grease. Based on the evidence presented, a reasonable jury could find only that the hazard was open and obvious and that it could have been easily remedied by Pimental. Therefore, Pimental did not present evidence that supports liability under the first exception.

B

Pimental also argues that the defendant is liable under the second exception that imposes liability for an injury caused by a hazard under the control of the defendant. The vessel has a duty to "exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622. Liability based on this exception is not relieved when

the hazard is open and obvious. *Masinter,* 867 F.2d at 897. If, however, a vessel has relinquished control over an area to the stevedore, then it is the primary responsibility of the stevedore to remedy a hazard in that area. *Turner v. Costa Line Cargo Services, Inc.,* 744 F.2d 505, 512–513 (5th Cir.1984).

As we have said, Pimental fell on the landing in the housing for the Number 3 crane. Apparently, this was the only way to get to the crane controls. The crane was only being operated by employees of the stevedore. The crane was necessary to unload the cargo being handled by the stevedore. Furthermore, the accident took place in a part in the crane housing that would be unaccessible to other personnel since a ladder within this portion of the crane housing would rotate within the housing in response to the motion of the crane as controlled by the crane operator. Clearly, the crane and the crane housing were not under the active control of the vessel; the crane and the crane housing are areas that were turned over to the stevedore. Therefore, Pimental did not present evidence that supports liability under the second exception.

## C

Finally, Pimental argues that the defendant is liable under the third exception that imposes on the vessel a duty to intervene. The Supreme Court discussed this duty to intervene in *Scindia:*

> [I]t seems to us, that [the stevedore's] judgment in this respect was so obviously improvident that [the vessel], if it knew of the defect and that the stevedore was continuing to use it, should have realized the winch presented an unreasonable risk of harm to the longshoremen, and that in such circumstances it had a duty to intervene and repair the ship's winch. The same would be true if the defect existed from the outset and [the vessel] must be deemed to have been aware of its condition.

*Scindia,* 451 U.S. at 175–176, 101 S.Ct. at 1626–1627. Thus, a vessel has a duty to intervene when it has actual knowledge of a dangerous condition and actual knowledge that the stevedore, in the exercise of "obviously improvident" judgment, has failed to remedy it. *Randolph,* 896 F.2d at 970; *Woods v. Sammisa Co.,* 873 F.2d 842, 854 (5th Cir.1989), *cert. denied,* 493 U.S. 1050, 110 S.Ct. 853, 107 L.Ed.2d 847 (1990); *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1037 (5th Cir.1983).

Pimental argues that the defendant knew about the oil and grease. He argues that somebody cleaned the windows in the crane housing during lunch, that it must have been the vessel's crew, and that therefore the vessel must have been aware of the oil and grease.[2] He also argues that the walking foreman might have reported the condition to the crew, prompting the crew to clean the windows.[3] The district court found that this scintilla of evidence was not enough evidence from which a reasonable jury could find that the vessel had actual knowledge of the oil and grease. We agree.

Pimental further argues that the oil and grease were present when the defendant turned over the ship, and that therefore, the defendant must be deemed to have been aware of it.[4] Pimental argues that because the crane operator who handled the crane on the first morning of the stevedoring operations testified that the oil and grease were already on the landing, the oil and grease must have been on the landing when the ship was turned over. The vessel's second mate, however, testified that the crane area was in good condition when he examined it prior to turnover. Arguably, there is sufficient evidence from which a reasonable jury could conclude that the condition existed at the outset of the stevedoring operations, making it appropriate to deem that the defendant had actual knowledge of its existence.

Even so, however, there was not sufficient evidence to support the conclusion that the vessel had "actual knowledge that it could not rely on the stevedore to protect its employees and that if unremedied the condition posed a substantial risk of danger." *Randolph,* 896 F.2d at 971. *See also Woods,* 873 F.2d at 852. Nor was there evidence that the defendant had actual knowledge that the stevedore had not cleaned up the oil. Thus, there was not sufficient evidence to support the defendant's liability under the third exception.

---

[2]There was testimony that the crew must have cleaned the windows because cleaning windows was not the responsibility of longshoremen.

[3]The walking foreman was deceased at the time of trial.

[4]The Supreme Court implied in *Scindia* that if a defect was present from the outset, a vessel can be deemed to have actual knowledge of it. *Scindia,* 451 U.S. at 176, 101 S.Ct. at 1626.

## IV

In conclusion, we hold that there was insufficient evidence to support a finding of liability based on any of the three exceptions to the general rule that a stevedore is responsible for the safety of the longshoremen. The vessel did not fail to warn the stevedore of any hidden defects because the oil and grease were open and obvious. Furthermore, the plaintiff did have an alternative that was not unduly impracticable or time-consuming—he could have quickly applied the material to absorb the oil. Therefore, the defendant could not be held liable under the first exception. The crane housing landing was an area that was turned over to the stevedore, and therefore the defendant had no duty to remedy hazards under the second exception. Finally, Pimental offered no proof that the defendant had actual knowledge that the stevedore had not remedied the oil and grease. Thus, the defendant had no duty to intervene. Therefore, the order of the district court granting the defendant a directed verdict is

AFFIRMED.