42 F.3d 1385
 1995 A.M.C. 2783
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Steven F. HALL, Plaintiff-Appellant,
v.
ATLANTIC CONTAINER LINE; G.I.E. Atlantic Bail, Defendants-Appellees.
 No. 94-1272.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 27, 1994.
Decided Nov. 29, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia at Norfolk. Tommy E. Miller, Magistrate Judge. (CA-93-861)
 Ralph Rabinowitz, Rabinowitz, Rafal, Swartz, Taliaferro & Gilbert, P.C., Norfolk, VA, for appellant.
 D. Arthur Kelsey, Hunton & Williams, Norfolk, VA, for appellees.
 John E. Holloway, Hunton & Williams, Norfolk, VA, for appellees.
 E.D.Va.
 AFFIRMED.
 Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Steven F. Hall appeals the summary judgment granted to Atlantic Container Line and G.I.E. Atlantic Bail (collectively, "vessel") in Hall's negligence action claiming damages for injuries he sustained while unloading a cargo ship for a stevedore. We find no error, and we affirm.
 
 
 2
 * On September 12, 1990, Hall was working as a longshoreman for an independent stevedore company that had been hired to unload the M/V Atlantic Cartier. The ship was a "RO/RO" type--roll on, roll off--that opens at the stern to allow cargo to be driven on and off. About four hours after the unloading operations had begun, Hall was driving a forklift in the cargo area on the internal deck when a package fell off. He got off the forklift and began to walk toward the package when he stepped in a tie-down hole and twisted his ankle. Tiedown holes are x-shaped cut-outs used to lash cargo to the deck.
 
 
 3
 Hall sued the vessel for negligence under Sec. 5(b) (33 U.S.C. Sec. 905(b)) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et seq. He alleged that one or more of the following was the cause of his injury: (1) various florescent lights were out, which made it difficult to see the tie-down holes in the smoky belowdeck cargo area; (2) the tie-down hole in which Hall injured his foot had no rubber boot inside, which allowed his foot to go down further than it would have had the boot been intact;[1] (3) the poor design of the tie-down holes--flush with and the same color as the deck--made the holes more difficult to see. The magistrate court[2] granted the defendants' motion for summary judgment, and Hall appeals.
 
 II
 A vessel's "turnover duty" is the duty to
 
 4
 exercise ordinary care under the circumstances to turn over the ship and its equipment and appliances in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety to persons and property.
 
 
 5
 Howlett v. Birkdale Shipping Co., --- U.S. ----, 114 S.Ct. 2057, 2063 (1994) (internal quotation omitted). One component of this turnover duty is the duty
 
 
 6
 to warn the stevedore of hazards ... [which] are known to the vessel or should be known to it in the exercise of reasonable care, and would likely be encountered by the stevedore in the course of his cargo operations, are not known by the stevedore, and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.
 
 
 7
 Id. (internal quotation omitted).
 
 
 8
 Although a vessel is entitled to rely on the stevedore's conclusion in the first instance that conditions existing at the outset of cargo operations or developing during such operations do not pose an unreasonable risk of harm, the vessel has the duty to intervene when the stevedore's decision to continue his tasks is "obviously improvident." Bonds v. Martinson and Lange, 717 F.2d 123, 127 (4th Cir.1983) (quoting Scindia Steam Nav. Co. v. De Los Santos, 451 U.S. 156, 175 (1981)).
 
 
 9
 Hall makes two arguments, one based on the turnover duty and the other on the duty to intervene: (1) the bootless tie-down hole was a latent hazard[3] that existed at the beginning of stevedoring operations and about which the vessel had a duty to warn the stevedore, and (2) after operations had begun, this hole (even if the boot had been destroyed during operations) and the dim lighting combined to produce such an unreasonably unsafe working environment that the vessel had a duty to stop operations so that repairs to the boots could be made. We consider each argument in turn.
 
 III
 
 10
 Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). We review the district court's grant of summary judgment de novo. Farwell v. Un, 902 F.2d 282, 287 (4th Cir.1990). For purposes of our review, we accept Hall's contentions that the boot was missing when he stepped in the tie-down hole and that the lack of the boot allowed his foot to go more deeply into the hole.
 
 
 11
 * Any claims that the turnover duty was breached because of the design of tie-down hole on the vessel's deck or because one or more boots were missing are meritless. All of the ships on the American Container line have similar tie-down holes. Hall had worked around this type of tie-down hole on numerous occasions during his twenty years as a longshoreman, sometimes as a lashing foreman in charge of using the holes to secure cargo. As Hall admitted, the holes are "everywhere," and he and his fellow longshoremen simply step around them. Moreover, the boots are often missing. There was uncontradicted evidence that the rubber boots are often the victims of deterioration from grease and the pressure of heavy equipment passing over them during loading operations. At the point of turnover, the holes were an open and obvious condition, and the vessel was justified in relying on the stevedore to determine whether the unloading could be carried out.
 
 B
 
 12
 Hall also argues that, even if there was no breach of the turnover duty, it was "obviously improvident" for the stevedore to continue to operate as the day wore on because the darkening of the internal deck area, together with the bootless tie-down holes, created an unreasonably unsafe working environment. Thus, he argues, the vessel had a duty to stop operations until the danger could be alleviated. This argument is based on a faulty premise.
 
 
 13
 Dim lighting, of course, is not a latent hazard, see n. 3 supra, but Hall's argument seems to be (1) that the vessel knew or should have known that some of the rubber boots would be missing; (2) that the absence of boots increased the danger to the longshoremen; (3) that even if bootless holes were not such a unreasonable hazard at the outset, they became unreasonably unsafe when they became harder to see and to avoid; and, therefore, (4) that the vessel had a duty to stop operations and replace the boots. This argument is premised on some sort of ongoing duty on the vessel's part to supervise the stevedore.
 
 
 14
 In other words, Hall argues that even if the boots were intact at the point of turnover, the vessel had a continuing duty to inspect during the stevedoring operation and to replace missing or damaged boots. There is, however, "no general duty by way of supervision or inspection to exercise reasonable care to discover conditions that develop within the confines of the cargo operations that are assigned to the stevedore." Howlett, 114 S.Ct. at 2064-65. Hall does not point us to any "pertinent statutes, regulations, or custom [that] place[s] or assume[s] a continuing duty on the vessel" to make such repairs, Scindia Steam, 101 S.Ct. at 1626, and we are unaware of any. "Absent actual knowledge of a hazard, ... the duty to warn may only attach if the exercise of reasonable care would place upon the shipowner an obligation to inspect for or discover the hazard's existence." Howlett, 114 S.Ct. at 2064. Moreover, the holes, with or without boots, were not such a severe hazard that the stevedore's decision to continue was "obviously improvident."
 
 
 15
 Under the Act, a shipowner is only liable for its own negligence and not that of the stevedore the shipowner employs to carry on cargo operations aboard its vessel. The tie-down holes on the deck were obvious to all, and Hall does not contend that the lighting was so deficient that the holes could not be avoided. See Piemental v. LTD Canadian Pacific Bul, 965 F.2d 13 (5th Cir.1992) (combination of grease on deck and dim lighting did not trigger duty to intervene). Moreover, it was not unusual for the rubber boots to be missing. In view of the open and obvious nature of the alleged hazard, a hazard to which Hall was no stranger, the vessel had no duty to warn the stevedore or to make continuous inspections, and it cannot be said that the stevedore was so "obviously improvident" in continuing to carry on operations that the vessel had a duty to intervene and stop operations.
 
 AFFIRMED
 
 
 [1]
 The rubber boot is a thin rubber membrane that fits under the tiedown hole. According to the stevedore and the gang foreman, the membranes are not strong enough to prevent a foot from going down farther into the hole, and their only purpose is to prevent dirt and debris from getting into the fittings. Plaintiff's expert, however, said that a foot could go farther down into the hole when the boot was missing
 
 
 [2]
 The parties consented to have the case heard by the magistrate judge, with direct appeal to the court of appeals. 28 U.S.C. Sec. 636(c)(3)
 
 
 [3]
 Hall concedes that the dim lighting alone was clearly not a latent hazard. As the vessel points out, federal regulations make it the stevedore's responsibility to insure adequate lighting. See 29 C.F.R. Sec. 1918.92(a) (1993). The cargo operation in which Hall was involved had been going on for four hours prior to the accident. Hall admitted in his deposition that he was looking at the fallen package rather than the deck when his foot got stuck and that, had he been looking down, he would have seen the tie-down hole