# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 22, 2010

No. 10-30002
Summary Calendar

Lyle W. Cayce
Clerk

THERESA DOW,

Plaintiff - Appellant

v.

OLDENDORFF CARRIERS GMBH & CO., KG; SINCERE INDUSTRIAL
CORPORATION; EVERMORE MARINE CORPORATION,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:07-CV-09356

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Theresa Dow sued Oldendorff Carriers GMBH & Co., KG; Sincere
Industrial Corp.; and Evermore Marine Corp. (collectively, "Defendants") under
§ 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"),
33 U.S.C. §§ 901 *et seq.*, alleging vessel negligence for personal injuries sustained
while employed by Coastal Cargo Co., Inc. ("Coastal Cargo"). After a bench trial

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-30002

on liability, the district court found the Defendants did not breach any duty owed to Dow under § 905(b) and dismissed the case with prejudice.  We AFFIRM.

Dow was injured while working as a stevedore in a cargo hold of the M/V IRENE OLDENDORFF.[1]  Dow injured her leg when she jumped approximately five or six feet from the top of the steel cargo to the floor of the cargo hold (the "tank top").  At the time of the accident, Dow contends that it was dark in the cargo hold and difficult to see.  The hold had two access ladders that extended from the hatch on deck to the tank top.  Dow alleges that one of the ladders was not operational and was roped off.  She used the other ladder to access the top of the cargo, but additional cargo blocked the ladder from reaching the tank top.  When Dow jumped, a loose metal band from the steel cargo caught her right foot.  She landed on her left leg, sustaining permanent injuries.

Dow sued the Defendants alleging a breach of duty under the LHWCA, arguing that her injury was caused by the vessel owner's negligence.  We review the district court's findings of fact for clear error and consider all question of law *de novo*. *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 33 (5th Cir. 1997) (citation omitted).  Under § 905(b), a vessel owner owes three narrow duties to a longshoreman: (1) a turnover duty; (2) a duty to exercise reasonable care in areas of the vessel under active control of the vessel once stevedoring activities have begun; and (3) a duty to intervene. *Kirksey v. Tonghai Mar.,* 535 F.3d 388, 391 (5th Cir. 2008) (citing *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994)).

Dow contends the Defendants breached the turnover duty by failing to repair the broken hatch cover that allegedly precluded use of the second access ladder, failing to warn her of the loose metal bands among the steel cargo, failing to provide adequate lighting, and hazardously stacking the cargo against the

---

[1] Oldendorff Carriers GMBH & Co., KG chartered the vessel, Evermore Marine Corp. owned the vessel, and Sincere Industrial Corp. managed the vessel.

ladders. Under the turnover duty, a vessel owner has two responsibilities: (1) a duty to exercise ordinary care under the circumstances to turn over the vessel and its equipment in such a condition that an expert stevedore can carry on stevedoring operations with reasonable safety, and (2) a duty to warn the stevedore of latent or hidden dangers which are known or should have been known to the vessel owner. *Kirksey*, 535 F.3d at 392 (citing *Fed. Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 416–17 & n.18 (1969)). The duty to warn "does not include dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering." *Id.* (citing *Howlett*, 512 U.S. at 105). The open and obvious defense also applies to the duty to turn over a reasonably safe vessel. *Kirksey*, 535 F.3d at 394. However, "if a longshoreman's only alternatives when facing an open and obvious hazard are unduly impracticable or time consuming, then the vessel owner may still be held liable." *Pimental v. LTD Can. Pac. Bulk Ship Servs.*, 965 F.2d 13, 16 (5th Cir. 1992) (citing *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 167 (5th Cir. 1990)).

Any problems with the hatch cover that rendered the second ladder inoperable were open and obvious to Dow. Furthermore, Dow should have had knowledge of the broken binding straps within the cargo because the bill of lading advised her employer, Costal Cargo, of the broken straps prior to Dow's injury. Additionally, a stevedore generally expects to encounter broken binding straps when discharging this type of cargo, and Dow herself testified to knowledge of the broken straps within the cargo hold. With regard to the lighting, the vessel's crew rigged lights in the cargo hold on the day prior to the accident. Dow's accident occurred an half-hour before sunset. Even if the lighting were insufficient to continue work at that time of day, maintaining adequate lighting during cargo operations is the responsibility of the stevedore. *See Landsem v. Isuzu Motors, Ltd.*, 534 F. Supp. 448, 451 (D. Ore. 1982) (citing

*Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 176 (1981)); *see also Wright v. Gulf Coast Dockside, Inc.*, No. 97-2745, 1998 U.S. Dist. LEXIS 9519, at \*9–\*10 (E.D. La. June 23, 1998).

Finally, there was no breach in the Defendants' turnover duty by stacking cargo against the bulkhead. Both parties' expert witnesses testified that it was customary to stack the cargo against the bulkhead in order to prevent the cargo from shifting. Thus, the manner in which the cargo was stowed was not a latent danger and did not give rise to a duty to warn. Moreover, twenty-foot portable ladders were available for use in the cargo hold, an alternative to jumping down to the tank top that was neither unduly impracticable nor time consuming. *See Pimental*, 965 F.2d at 16. Accordingly, the district court properly found that the Defendants did not breach their turnover duty to Dow.

Dow next contends the Defendants maintained active control over the stevedoring operations but breached their duty to exercise reasonable care over that area. To determine whether a vessel owner retains active control over an area, this court generally considers whether the area in question is within the contractor's work area, whether the work area has been turned over to the contractor, and whether the vessel owner controls the methods and operative details of the stevedore's work. *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x 397, 403 (5th Cir. 2007); *Pledger v. Phil Guilbeau Offshore*, 88 F. App'x 690, 692 (5th Cir. 2004) (per curiam). Dow testified that none of the vessel crew were in the hold area when the accident took place, and no crew member was involved with the cargo operations. The vessel crew controlled none of the methods or operative details of Costal Cargo's work. Thus, the cargo area had been turned over to Costal Cargo and did not remain under Defendants' active control.

Dow argues that the vessel's captain testified that he observed cargo operations from the vessel's bridge, but the fact that any member of the vessel

crew watched over the cargo operations does not establish active control. A vessel owner does not trigger a duty by having its employees check on the progress of the contractor's work. *See Fontenot v. United States*, 89 F.3d 205, 208 (5th Cir. 1996) (citing *Futo v. Lykes Bros. Steamship Co.*, 724 F.2d 209 (5th Cir. 1984)). Dow also contends the Defendants were in active control of the lighting in the hold area because the vessel crew originally erected the lighting prior to cargo operations. However, absent some agreement to the contrary, the vessel generally has no duty to provide adequate lighting for longshoremen. *Bias v. Hanjin Shipping Co.*, No. 07-0338, 2009 U.S. Dist. LEXIS 21930, at *17 (S.D. Tex. Mar. 18, 2009). *But see Masinter v. Tenneco Oil Co.*, 867 F.2d 892, 896–97 (5th Cir. 1989) (suggesting that the vessel owner may have a duty to provide adequate lighting when it is contractually bound to do so). Dow offers no evidence of a contractual obligation between the vessel and Coastal Cargo to provide lighting in the hold. Accordingly, the district court did not err in concluding that the Defendants did not retain active control over the stevedoring operations.

Dow argues the Defendants breached their duty to intervene by allowing the longshoremen to jump five or six feet off the cargo to the tank top. A vessel owner has a duty to intervene when he has actual knowledge of a dangerous condition and knows that the stevedore, in the exercise of "obviously improvident judgment," intends to continue working in the face of the danger. *Pimental*, 965 F.2d at 17 (internal quotation marks and citation omitted). This duty is "narrow" and requires a showing that the condition "is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm—even when the stevedore's expertise is taken into account." *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1249 (5th Cir. 1997) (citations omitted).

Dow presented no evidence in support of her contention that the Defendants had actual knowledge that the stevedores were accessing the tank

top of the hold by jumping from the cargo. Neither the port captain present on the vessel when Dow was injured nor the vessel's captain testified to knowledge of Costal Cargo employees jumping from the cargo to the tank top. Dow stated she did not look to see if any member of the vessel crew was watching her before she jumped, and she only spotted crew members observing her from outside the vessel's hold after she lay injured on the tank top.

Furthermore, the stevedores' judgment was not obviously imprudent in determining that jumping from the cargo to the tank top, though dangerous, was safe enough to attempt. *See Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990). Dow testified that stevedores routinely jump from cargo, and that she herself had jumped before, though not from that height. Given that the duty to intervene is narrow, Dow's five-to-six-foot jump to the tank top represented judgment that is poor but not obviously imprudent. Accordingly, the district court did not err in finding the Defendants did not breach their duty to intervene.

Finally, Dow argues the district court abused its discretion by admitting the testimony of David Tantrum because he was not qualified as an expert witness. "The admission or exclusion of expert testimony is a matter left to the discretion of the trial judge, and his or her decision will not be disturbed unless it is manifestly erroneous." *Perkins v. Volkswagen of Am., Inc.*, 596 F.2d 681, 682 (5th Cir. 1979) (citing *Salem v. U.S. Lines Co.*, 370 U.S. 31, 34 (1962)). The record reveals Tantrum is qualified to provide expert testimony on the basis of his extensive experience as a marine surveyor, which included boarding vessels and conducting investigations of injuries to stevedores and longshoremen. Accordingly, the district court did not abuse its discretion in finding Tantrum qualified to testify as an expert marine surveyor.

For the foregoing reasons, we AFFIRM the district court's judgment.