# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 23, 2012

No. 11-20826

Lyle W. Cayce
Clerk

JUNIOR A. SOBRINO-BARRERA,

Plaintiff-Appellant

v.

ANDERSON SHIPPING COMPANY, LIMITED; SOCOGEM SAM;
OLDENDORFF CARRIERS GMBH & COMPANY, K.G.,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-3642

Before BENAVIDES, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Junior A. Sobrino-Barrera sustained serious injuries while supervising the unloading of steel pipes from a cargo ship. He filed suit under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). The ship's owner, operator, and charterer moved for summary judgment and to strike an affidavit from Sobrino-Barrera's liability expert. The district court struck the affidavit because

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20826

it was untimely and contained new opinions that had not been disclosed in discovery. Additionally, the district court granted summary judgment, finding that the defendants had not breached any duties owed to Sobrino-Barrera under the LHWCA. We AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

Sobrino-Barrera worked as a longshoreman for Gulf Stream Marine, Inc. On the day of the accident, Sobrino-Barrera was supervising his team as they unloaded steel pipes from the M/V Greta. The team lifted bundles of pipe out of the ship using a crane. The team lifted two bundles of pipes without incident. When the team lowered the third bundle onto an existing pile of bundled pipe, the lower bundle shifted and began to roll toward Sobrino-Barrera. He unsuccessfully attempted to jump over the bundle. The rolling bundle pinned Sobrino-Barrera's left leg against a wall, crushing it. His leg later was amputated below the knee.

Sobrino-Barrera filed suit against the ship's owner, Anderson Shipping Company, Ltd.; the ship's operator, SoCoGEM Sam; and the ship's charterer, Oldendorff Carriers GmbH & Company, K.G., alleging negligence under Section 905(b) of the LHWCA.[1] Sobrino-Barrera designated Captain Joe Grace as his liability expert. Captain Grace was to offer opinions regarding the stowage and unloading of pipe. In his expert report, Captain Grace expressed his opinion

_____

[1] 33 U.S.C. § 905(b) provides, in pertinent part:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.

2

No. 11-20826

that Sobrino-Barrera's injury was caused by improper stowage of the pipes. The specific problem was that the pipes were stowed "hard aft to [the] bulkhead" and without sufficient dunnage, which are loose wooden separators.

Anderson, SoCoGEM, and Oldendorff moved for summary judgment, arguing that Sobrino-Barrera failed to prove they had breached any duty owed to him. In his response, Sobrino-Barrera attached an affidavit from Captain Grace.[2]  Anderson, SoCoGEM, and Oldendorff moved to strike the affidavit, arguing that it contained new opinions not disclosed in discovery and was untimely. The district court agreed and struck the affidavit in accordance with Rule 37(c)(1) of the Federal Rules of Civil Procedure except to the extent that it "proved up" Captain Grace's original expert report. The court also granted summary judgment because there was no evidence that the defendants had breached any of the legal duties owed to Sobrino-Barrera under *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981).

### DISCUSSION

#### I. Expert Affidavit

Sobrino-Barrera contends that Captain Grace's affidavit contained no new opinions and simply supported the original expert report. We review a district court's decision to exclude evidence pursuant to Rule 37(c) for abuse of discretion. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004).

Under Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure, an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Opinions not properly disclosed in

---

[2] Sobrina-Barrera filed two expert affidavits. The first was filed following Anderson and SoCoGEM's motion for summary judgment. The second affidavit was filed as part of Sobrino-Barrera's response to Oldendorff's slightly later motion for summary judgment. The second affidavit adopts verbatim the information set forth in the first affidavit. It includes an additional section with opinions about the appropriateness of the wooden dunnage.

accordance with that rule may be excluded "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The district court excluded Captain Grace's affidavit based on its determination that it contained new opinions not contained in the original expert report.

For example, Captain Grace stated for the first time in his affidavit that stowing pipe hard aft to the bulkhead is an "abnormal and unsafe" practice of stowing pipe. He further stated that stowing pipe in this manner "makes it much more likely, almost certain, the pipe will shift diagonally during the unloading process." Additionally, Captain Grace claimed for the first time that his opinions were "the product of reliable principles and standards generally accepted and utilized by experts in the field of proper stowage[,] inspection of stowage[,] and stevedoring principles." As the district court noted, though, he provided no details regarding these principles and standards.

We conclude that because these opinions were not included in Captain Grace's expert report and went beyond "proving up" the opinions contained in that report, the district court did not abuse its discretion in excluding the affidavit under Rule 37(c)(1).

## II. *Summary Judgment*

Sobrino-Barrera also argues that the district court erred in granting summary judgment. We review the district court's ruling on a summary judgment motion *de novo*. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." *McLaurin v. Noble Drilling (U.S.), Inc.*, 529 F.3d

No. 11-20826

285, 288 (5th Cir. 2008). "But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Id.* (quotation marks omitted).

Under Section 905(b), a longshoreman may recover damages for injuries "caused by the negligence of a vessel."[3] The duties owed to longshoremen under Section 905(b) are these: "(1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene." *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 391 (5th Cir. 2008). Liability under Section 905(b) requires proof that the shipowner breached one of these narrowly defined duties. *See id.* 391-92.

*A. Turnover Duty*

The turnover duty "relates to the condition of the ship upon the commencement of stevedoring operations." *Howlett v. Birkdale Shipping, Co., S.A.*, 512 U.S. 92, 98 (1994). This duty can be separated into (1) "a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety," and (2) "a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it." *Kirksey*, 535 F.3d at 392. Thus, the duty to warn is a narrow one; it does not include dangers that are "open and obvious" dangers or those that "a reasonably competent stevedore should anticipate encountering." *Id.*

Sobrino-Barrera argues that the stowage of pipes against the bulkhead

---

[3] Under the LHWCA, "vessel" is defined as including the vessel's owners, operators, and charterers. 33 U.S.C. § 902(21). Consequently, Anderson, SoCoGEM Sam, and Oldendorff are subject to Section 905(b). We will refer to them collectively as "the vessel" in our discussion of the *Scindia* duties unless the context requires otherwise.

No. 11-20826

with inadequate dunnage constituted an unreasonably dangerous condition.[4] The district court disagreed because these alleged defects were open and obvious to Sobrino-Barrera.

Sobrino-Barrera stated in his deposition that as supervisor, it was his responsibility to assess the cargo before formulating a plan for its removal from the ship. On the day of the accident, he indicated that he checked to see how the cargo was stowed before his crew began unloading the pipes. The photographs of the cargo taken before unloading began, show the pipes stowed against the bulkhead. The configuration of the pipe would have necessarily been open and obvious to Sobrino-Barrera.

Sobrino-Barrera also testified that when his crew started unloading, he noticed the lack of dunnage between the pipes. One of his crew members testified regarding the lack of dunnage. The district court therefore properly concluded that the lack of dunnage was an open and obvious condition. *See, e.g., Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 16 (5th Cir. 1992) (concluding that oil and grease on passageway was open and obvious because two workers had testified to noticing it).

The alleged defects in the cargo were open and obvious to Sobrino-Barrera, which means the vessel had no turnover duty to warn against them.

*B. Active Control Duty*

A vessel also has a duty to "exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'" *Howlett*, 512 U.S. at 98. Sobrino-Barrera contends that the vessel's cargo plan called for the pipes to be stowed "against the aft bulkhead," a requirement that

---

[4] Before the district court, Sobrino-Barrera also argued that the uneven stowage of the pipes, which created a "hill" in the cargo, also constituted a dangerous condition. He has not raised this contention on appeal and, therefore, has abandoned it. *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008).

6

he says meant the vessel was controlling the details of his work. He makes too much of the cargo plan. "Most vessels take responsibility . . . for preparing a stowage plan, which governs where each cargo will be stowed on the ship." *Id.* at 103. Involvement in the cargo plan does not constitute active control. *See id.*

Sobrino-Barrera testified in his deposition that no one from the M/V Greta directed the manner in which he and his crew unloaded the pipes or participated in the unloading process. *See Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997) (explaining that active control requires some evidence that the vessel's crew retained "operational control" over the area). Accordingly, Sobrino-Barrera's claim of liability under the active control duty must fail.

*C. Duty to Intervene*

"[A] vessel has a duty to intervene when it has actual knowledge of a dangerous condition and actual knowledge that the stevedore, in the exercise of 'obviously improvident' judgment, has failed to remedy it." *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1248 (5th Cir. 1997). The obligation to intervene under this duty "is narrow and requires something more than mere shipowner knowledge of a dangerous condition." *Id.* at 1249 (quotations omitted).

In the present case, there is no evidence that the vessel's crew knew that the manner in which the pipes were stowed created a dangerous condition. Further, according to Sobrino-Barrera's deposition testimony, he and his crew unloaded the pipes using their normal and customary procedure. Therefore, there is no evidence that the unloading process undertaken by Sobrino-Barrera and his crew was so hazardous that the vessel had a duty to intervene. Consequently, the district court correctly found that Sobrino-Barrera had failed to present evidence that the vessel had a duty to intervene.

*D. Contractual Duty*

Sobrino-Barrera also argues that Oldendorff, the ship's charterer, breached its contractual duties. Specifically, Sobrino-Barrera points to the

No. 11-20826

charter party agreement, which required the charterer to "load, stow, trim, discharge, lash, secure, dunnage and unlash the cargo." Sobrino-Barrera contends that under this contractual provision, Oldendorff had a duty to properly stow the cargo. As the district court noted, however, the agreement was between Cosco Bulk Carrier Co., Ltd., the owner of the M/V Greta, and Armada (Singapore) Pte., Ltd., Oldendorff's subcharterer. Oldendorff is not a party to the contract. In addition, this court has held that this type of contractual provision "acts as an indemnification clause between the owner and the time charterer and does not affect the duties owed to longshoremen." *Robinson*, 505 F.3d at 366. Accordingly, this argument is without merit.

AFFIRMED.