# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20091

LARRY KITCHENS,

       Plaintiff – Appellant,

v.

STOLT TANKERS B. V.; STOLT FOCUS B. V.,

       Defendants – Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-2088

Before STEWART, Chief Judge, and DAVIS and GRAVES, Circuit Judges.

PER CURIAM:*

In this case arising under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), the district court granted summary judgment in favor of Defendants-Appellees and dismissed Plaintiff-Appellant's claims in their entirety. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Plaintiff-Appellant Larry Kitchens is an experienced harbor worker and resident of Harris County, Texas. In 2014, Kitchens was employed as an

---

United States Court of Appeals
Fifth Circuit

**FILED**
August 2, 2016

Lyle W. Cayce
Clerk

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20091

Operations Supervisor for Westway Terminal ("the terminal") in Houston, Texas, where he supervised various activities involving cargo operations between vessels and the terminal. At times, Kitchens' duties as supervisor required him to board vessels that were docked in the terminal. Defendants-Appellees Stolt Tankers, B.V. and Stolt Focus, B.V., (collectively, "Stolt"), own and operate the M/V Stolt Focus ("the Vessel"). On April 17, 2014, Stolt was conducting cargo operations at the terminal. The record reflects that the cargo being unloaded by Stolt contained a liquid referred to as "fatty alcohol" or "veg oil." At some point during the night, Kitchens determined that the cargo was being unloaded, or "pumped," too slowly off of the Vessel. Consequently, at approximately 1:00 a.m., Kitchens boarded the Vessel to address the slow pumping rate. When he boarded the Vessel, Kitchens was accompanied by his co-worker, Zach Curtis, and a crewmember of the ship. According to the record, after boarding the Vessel, Kitchens advanced along the main deck and upstairs to the Cargo Control Room without incident. After approximately ten minutes passed, Kitchens exited the control room and descended the stairs along the same path he had taken when he boarded the ship. According to Kitchens, when he stepped off of the stairs to the main deck, he took a couple of steps and then slipped and fell, enduring substantial injuries. He remained there for about a minute and then left the Vessel without assistance. Neither Kitchens nor any of the witnesses to the accident reported observing any type of foreign substance on the part of the deck where Kitchens fell. The record reflects that, after the accident, Kitchens failed to submit a company-mandated accident report and also waived his right to file a claim for compensation and benefits under the LHWCA.

On May 23, 2014, Kitchens filed suit in state court against Stolt alleging negligence claims under the LHWCA. *See* 33 U.S.C. § 905(b). Stolt removed to federal district court pursuant to 28 U.S.C. § 1333 and moved for summary

No. 16-20091

judgment.  The district court granted summary judgment in favor of Stolt and dismissed Kitchens' claims.  In its reasons for judgment, the district court concluded that Kitchens failed to prove that Stolt breached its "active control" and "turnover" duties under § 905(b) of the Act.  *See* 33 U.S.C. § 905(b); *see also Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166–67 (1981).

Kitchens filed this appeal.

## II.  STANDARD OF REVIEW

We conduct a de novo review of a district court's grant or denial of summary judgment, applying the same standard as the district court. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007) (citation omitted).  Summary judgment is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id*. at 366; Fed. R. Civ. P. 56(a). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted). "[R]easonable inferences are to be drawn in favor of the non-moving party." *Robinson*, 505 F.3d at 366 (citation omitted).

## III. DISCUSSION

Kitchens' sole argument on appeal is that the district court erred in dismissing his "active control" claim.[1]  *See Scindia*, 451 U.S. at 167.  Kitchens contends that the Vessel's walkway where he was injured was dimly lit and extremely slick.  He submits that dangerous walkways of this sort are precisely the type of physical condition contemplated by *Scindia* as giving rise to a Section 905(b) claim.  Kitchens concludes that he fell "because of accumulation

---

[1] Kitchens does not appeal the district court's dismissal of his claim that Stolt breached its "turnover" duty under 33 U.S.C. § 905(b).

of veg oil or other foreign substances on the walkway, the presence of water on the walkway that was not the result of dew or rain, the lack of a nonskid on the walkway, or some combination of these factors."

Both parties agree that the LHWCA applies and provides Kitchens' exclusive remedy against Stolt. Section 905(b) of the Act permits a covered maritime worker to recover damages for personal injury caused by the negligence of a vessel. *See* 33 U.S.C. § 905(b). In *Scindia*, the Supreme Court articulated the scope of a vessel's duty under the Act, the underlying principle being "that the primary responsibility for the safety of the longshoremen rests upon the stevedore." *See Pimental v. LTD Canadian Pacific Bul*, 965 F.2d 13, 15 (5th Cir. 1992) (citation omitted); *see also Scindia*, 451 U.S. at 166–67. However, as this court has acknowledged, "[i]t is now well accepted that shipowners owe three narrow duties to longshoremen: (1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene." *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 391 (5th Cir. 2008).

Under the active control duty, "[t]he vessel has a duty to 'exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.'" *Pimental*, 965 F.2d at 16 (quoting *Scindia*, 451 U.S. at 167). Liability under the active control duty "is not relieved when the hazard is open and obvious." *Id*. (citation omitted); *see also Romero v. Cajun Stabilizing Boats, Inc.*, 307 F. App'x 849, 851 (5th Cir. 2009) (per curiam) (unpublished) (citation omitted). Neither party disputes that Stolt maintained exclusive control over the area of the Vessel where Kitchens' fall occurred and, consequently, that the active control duty exception could potentially apply here.

No. 16-20091

As the district court correctly noted, liability under the active control duty is premised on the presence or existence of a "hazard" under the active control of the vessel. *Pimental*, 965 F.2d at 16. The record reflects that neither Kitchens nor any of the eye witnesses to the incident observed any type of foreign substance—open, obvious, or otherwise—on the area where Kitchens slipped, before or after the accident. Moreover, subsequent to his fall, Kitchens was unable to gather any direct or circumstantial evidence that there was a hazard on the walkway where he slipped. There was no evidence submitted that any of Stolt's cargo leaked, dripped, or spilled at any time prior to the incident, or that any person tracked any type of slippery substance onto the walkway of the Vessel. Kitchens conceded that it had not rained the night of the incident. Only one witness to the incident observed naturally-occurring moisture due to humidity on the deck.[2] None of the witnesses observed any foreign substances on the deck.[3] Although Kitchens points to the lack of a non-skid surface on the walkway where he fell, this court has not held that the lack of a non-skid surface alone is sufficient to give rise to a finding of liability under the active control duty exception.[4] In addition, this court has not held, in the absence of an agreement to the contrary, that the vessel has a general duty to provide adequate lighting for longshoremen. *See Dow v. Oldendorff Carriers*

---

[2] Kitchens does not argue that the presence of naturally occurring moisture on a vessel is sufficient to give rise to a finding of liability under the active control duty exception.

[3] The record reflects that Kitchens' co-worker, Zach Curtis, originally signed an affidavit prepared by Kitchens' attorney that there was something other than dew from humidity on the part of the deck where Kitchens fell. However, Curtis later recanted that affidavit, clarifying that he did not know if any substance was present on the deck where Kitchens fell.

[4] Kitchens avers that the fact that he was wearing Red Wing work boots with slip-resistant soles designed to maintain traction is somehow probative of the notion that the walkway was slick and unreasonably dangerous. This statement, however, is nothing more than unsupported speculation and thus insufficient to defeat summary judgment. *See Brown*, 337 F.3d at 541 (citation omitted).

*GMBH & Co.*, 387 F. App'x 504, 507 (5th Cir. 2010) (per curiam) (unpublished) (citation omitted).

In light of his failure to produce any evidence of a hazard on the walkway,[5] Kitchens' conclusion that he slipped "because of accumulation of veg oil or other foreign substances on the walkway, the presence of water on the walkway that was not the result of dew or rain, the lack of a nonskid on the walkway, or some combination of these factors" is nothing more than unsupported speculation and therefore insufficient to defeat a motion for summary judgment. *See Brown*, 337 F.3d at 541 (citation omitted) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

For these reasons, we conclude that the district court did not err in concluding that Kitchens failed to show that there was a genuine issue of material fact with respect to his active control claim, thereby entitling Stolt to summary judgment as a matter of law. *Robinson*, 505 F.3d at 366.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the district court's summary judgment.

---

[5] Kitchen submits in his brief that the district court misapplied the law because it is well-settled in this circuit that an open and obvious hazard does not work as an absolute bar to a harbor worker's active control claim.  However, in light of our conclusion that Kitchens has failed to produce evidence of *any* hazard, we do not reach the issue of whether such hazard was open or obvious. *Pimental*, 965 F.2d at 16 (citing *Romero*, 307 F. App'x 851) (per curiam) (unpublished) (citation omitted).