# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41381
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 4, 2016

Lyle W. Cayce
Clerk

JOSEPH ABSTON,

      Plaintiff - Appellant

v.

JUNGERHAUS MARITIME SERVICES GMBH & COMPANY KG; JMS SCHIFFAHRTSGESELLSCHAFT MBH & COMPANY KG MS "PAVO J",

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:13-CV-40

Before HIGGINBOTHAM, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Joseph Abston, a longshoreman working aboard Defendants' ship, was injured when he slipped and fell from a "flat rack" cargo shipping container and brings this federal admiralty law action under 33 U.S.C. § 405(b) alleging breaches of the duties of active control and intervention. Magistrate Judge

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-41381

John R. Froeschner, proceeding with the consent of the parties, granted summary judgment for Defendants. We AFFIRM.

I.

On February 18, 2012, Plaintiff Joseph Abston was working as a longshoreman aboard Defendants' ship, the Pavo J. It was a stormy day; operations were suspended between 3:10 p.m. and 3:30 p.m. due to heavy rainfall that obscured the longshoremen's vision. At approximately 4:00 p.m., Abston and other crew members were loading flat racks onto the top deck of bay nine,[1] placing one near the edge of the deck fifteen feet above deck thirteen. While deck thirteen is usually surrounded by a "safety expansion," a series of two-and-a-half-foot-tall pipes linked together by rope, the expansion is routinely removed during cargo operations and was not then in place. The longshoremen did not object to the safety expansion's absence.

Abston worked as a lasher that day, requiring him to climb to the top of the cargo containers and unhook them from the crane that loaded them onto the deck. Rather than use a ladder, Abston "shimmied up the side of [the flat rack]" by receiving a "boost" from another longshoreman and climbing up the flat rack's hinges. Abston did not request or wear fall-safety equipment. While holding on to a hinge on the flat rack, Abston's foot and hand slipped, and he fell approximately ten feet to the top deck before falling a further fifteen feet to the bottom of deck thirteen, suffering significant physical injuries.

Following discovery, Defendants moved for summary judgment on all claims. At the hearing, Abston informed the court that he would not call live witnesses at trial but would instead rely solely on depositions. The court granted summary judgment for Defendants, and Abston timely appealed.

---

[1] Flat racks are shipping containers that are open on the sides in order to accommodate oversized items.

2

No. 15-41381

## II.

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Ordinarily, on summary judgment, a court is to view the evidence in the light most favorable to the non-movant and make all reasonable inferences in the non-movant's favor.[3] However, this Court has articulated a different standard where, as here, the trial court sits as the trier of fact and the parties will be relying on deposition testimony rather than live witness testimony:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, or, as is the case here, that delay under the circumstances proved is justified or unjustified, even if that conclusion is deemed "factual" or involves a "mixed question of fact and law." A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.[4]

"We review a summary judgment *de novo*, applying the same standard as did the district court."[5]

---

[2] FED. R. CIV. P. 56(a).

[3] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[4] *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978).

[5] *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001). Citing *Philips Oil Co v. OKC Corp.*, 812 F.2d 265, 273 n.15 (5th Cir. 1987), Defendants invite us to adopt a "clear error" standard of review. We decline to do so for two reasons. First, Defendants cite to no authority in support of a clear error standard. *Philips* certainly does not hold that clear error

3

No. 15-41381

III.

Abston alleges breach of two of the three duties owed by vessel owners to longshoremen under § 905(b).[6] First, that Defendants, while maintaining "active control" over the relevant area, failed to replace the safety expansion after cargo unloading operations ceased. Second, that Defendants failed to intervene and replace the safety expansion, leaving a hazardous work condition that the longshoremen and the stevedore-employer continued to work around.

The active control duty is the broader of the two duties here at issue; "a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'"[7] "If, however, a vessel has relinquished control over an area to the stevedore, then it is the primary responsibility of the stevedore to remedy a hazard in that area."[8] "To determine whether a vessel owner retains active control over an area, this court generally considers whether the area in question is within the contractor's work area, whether the work area has been turned over to the contractor, and whether the vessel owner controls the methods and operative details of the stevedore's work."[9]

---

is appropriate; in *Philips*, this Court merely noted that a more deferential standard of review *might* exist without reaching the question. Second, as in *Philips*, here we need not reach the question of whether a more deferential standard of review is appropriate because we affirm under our usual *de novo* review.

[6] "The duties owed to longshoremen under Section 905(b) are these: '(1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene.'" *Sobrino-Barrera v. Anderson Shipping Co., Ltd.*, 495 F. App'x 430, 433 (5th Cir. 2012) (quoting *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 391 (5th Cir. 2008)).

[7] *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994) (quoting *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 167 (1981)).

[8] *Piemental v. LTD Canadian Pacific Bul*, 965 F.2d 13, 16 (5th Cir. 1992).

[9] *Dow v. Oldendorff Carriers GMBH & Co.*, 387 F. App'x 504, 507 (5th Cir. 2010) (per cuiram).

4

Abston argues that "the evidence unequivocally establishes that Defendants exercised active control over the safety expansion," citing Jeffrey Williams's deposition testimony that longshoremen were not allowed to replace the safety expansion. Well and good, but, at the time of the accident, the vessel's crew had turned that area of the ship over to Ports America for cargo operations.[10] Nothing in the record indicates that the ship's crew controlled "the methods and operative details of the stevedore's work."[11] We are pointed to no competent summary judgment evidence that the top deck of bay nine was an area under the active control of the vessel or her crew; disallowing replacement of the safety expansion by the longshoremen is not enough to meet the plaintiff's burden. We turn to the duty to intervene claim.

"[A] vessel has a duty to intervene when it has actual knowledge of a dangerous condition and actual knowledge that the stevedore, in the exercise of obviously improvident judgment, has failed to remedy it."[12] To establish a breach of the duty to intervene, the plaintiff must show: (1) the vessel owner had actual knowledge of the defect; (2) the vessel owner had actual knowledge that the defect posed an unreasonable risk of harm; and (3) the vessel owner

---

[10] Longshoremen were loading and unloading cargo from approximately 7:10 a.m. until 4:45 p.m., with intermittent breaks due to heavy rainfall.

[11] Williams' deposition actually indicates just the opposite:

Q: Okay. None of the ship's crew told Mr. Abston what to do or how to do his job or anything like that to your knowledge?

A: We – we interact with the crew of the ship. We have one basic job. It is to get the ship unloaded and loaded back in a safe and timely manner.

Q: That's right. And the details of how you do that are up to you and your – the longshoremen working on the cargo, right?

A: Yes.

The only involvement the vessel had with the stevedore's operations appears to be in regards to the placement of cargo on the ship. But this Court has held that "[i]nvolvement in the cargo plan does not constitute active control." *Sobrino-Barrera*, 495 F. App'x at 434 (citing *Howlett*, 512 U.S. at 103).

[12] *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1248 (5th Cir. 1997) (citations omitted) (internal quotation marks omitted).

had "actual knowledge that it could not rely on the stevedore to protect its employees and that if unremedied the condition posed a substantial risk of injury."[13]

That Abston exercised "obviously improvident judgment" by climbing onto the flat rack without the use of either a safety harness or ladder is not challenged. The record indicates that Defendants removed the safety expansion as a matter of course during cargo operations and also suggests that the longshoremen did not raise concerns about the missing expansion. And there is no evidence in the record that Defendants could have reasonably anticipated that Abston, after a driving rainstorm, would climb the side of a flat rack near the missing safety expansion without the use of either a safety harness or a ladder.

Even where a risk exists, "[t]his Court has noted that in some situations the vessel owner is entitled to rely on the stevedore's judgment that the condition, though dangerous, was safe enough. It is only where the stevedore's judgment in continuing to work in the face of danger is 'obviously improvident' that the vessel acquires a duty to intervene."[14] Abston has not produced competent summary judgment evidence that the Defendants had actual knowledge that the missing safety expansion created an unreasonable risk of harm or that the Defendants were aware that Plaintiff would attempt his climb without a safety harness.[15] Without such evidence, Abston has failed to raise a question for trial regarding the duty to intervene.

---

[13] *Id.* (quoting *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990)).

[14] *Randolph*, 896 F.2d at 971 (citations omitted).

[15] Nor can Plaintiff articulate a causal link between the missing safety expansion and the concededly improvident conduct in which he engaged. Plaintiff would have fallen either way, and while he speculates that he might have been able to grab the safety expansion on the way down, the safety expansion was not designed nor intended for such purpose. Put slightly differently, an experienced longshoreman climbing the side of a flat rack in rainy

No. 15-41381

We AFFIRM summary judgment for Defendants.

---

conditions and without any fall protection equipment was not a harm within the risk of failing to replace the safety expansion.